IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-CR-112-MEF |
| | ) | |
| GLENN C. TOUPS | ) | |

**DEFENDANT'S OBJECTIONS TO RECOMMENDATION
OF MAGISTRATE JUDGE REGARDING MOTION TO SUPPRESS**

The Defendant, Glenn C. Toups, by and through undersigned counsel, Christine Freeman, makes the following objections to the Recommendation of the Magistrate Judge filed in this matter on August 9, 2006 (D.E. 37).

1.	The Recommendation fails to address the fact that the Search Warrant was issued for "**3850** McGhee Place Drive South, Apartment 4521-B, Montgomery, Al. 36111," even though the assertions in the affidavit for the search warrant concern **3580** McGehee Place, or McGehee Place Drive South, McGhee Place Drive South, McGhee Road, or McGehee Place.  (Search Warrant, Defense Exhibit 2;  Affidavit, Government Exhibit 1, paragraphs 21, 23, 24, 25, 26.)

	FBI Agent Faulkner admitted at the suppression hearing that the address she had for Mr. Toups was "**3580** McGehee Place Drive S, Apartment 4521." (Transcript, p. 52, lines 14 - 19.)  The government stipulated that the location actually searched was **3580** McGehee Place.  (Transcript, p. 58.)

2.	The Recommendation fails to address the fact that the affidavit submitted in support of the Search Warrant did not state or identify **any date** on which alleged criminal

activity took place.

FBI Agent Faulkner testified at the suppression hearing that she had concluded the emails from "nudetooldad" bearing attachments of purported child pornography were sent on October 6, 2004. (Transcript, p. 10, lines 18 - 25; p. 36, lines 21 - 24.) However, this conclusion was **never** asserted anywhere in the affidavit. The post-search testimony cannot now make up for the complete omission of this essential detail at the time the search warrant was sought and issued in July 2005.

3.  The Recommendation fails to address the fact that although the agents sought corroboration (from a phone book, Lexis-Nexis, driver's license records, and the apartment complex manager) for the assertion that Glenn Toups lived at the address described in the affidavit (Affidavit, Government Exhibit 1, paragraphs 23 - 26; Transcript, pp. 11 - 12), the agents had no information, and the affidavit never asserted, that criminal activity had **ever** taken place **at the residence sought to be searched**, either at the address listed in the affidavit or at the address listed in the search warrant.

Indeed, Agent Faulkner admitted at the suppression hearing that "prior to [her] execution of the search warrant" she did not have any information "that child pornography had ever been possessed at the place at which [she] executed the search warrant." (Transcript, pp. 38 - 39, lines 23 - 25, 1 - 2.) She admitted that "prior to [her] execution of the search warrant" she did not have any information "that Glenn Toups had ever possessed child pornography," or received child pornography, or distributed child pornography.

(Transcript, p. 38, lines 15 - 22; p. 39, lines 3 - 6.) She admitted that an Internet account may be accessed from any location where there is a computer with the physical capacity to permit such access. (Transcript, p. 50, lines 1 - 5.) She admitted that she had no information as to where the recipient of the 30 child pornography email attachments had been when he received them. (Transcript, pp. 30 - 31, lines 25, 1 - 7.)

4.  The Recommendation fails to address the fact that although the affidavit asserted that "nudetooldad" was an AOL member (Affidavit, paragraph 21), Agent Faulkner admitted at the suppression hearing that nothing in the emails from nudetooldad that she viewed identified the sender as being a member of AOL (Transcript, p. 53, lines 21 - 23) and she had no information that Beltram only received child pornography from AOL customers. (Transcript, pp. 53 - 55.)

5.  The Recommendation fails to address Defendant's argument that the affidavit did not allege facts to support a conclusion that there had been a violation of 18 U.S.C. 2252, which covers possession or receipt or distribution of child pornography with some connection to foreign or interstate commerce. No such connection was established in Agent Faulkner's affidavit. "(T)he probable cause necessary to justify a search warrant is coextensive with the probable cause required to justify an arrest warrant" for the crime which is the subject of the related investigation. *U.S. v. Brouillette*, 478 F.2d 1171, 1177 (5th Cir. 1973); *Giordenello v. United States*, 357 U.S. 480, 485- 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); 3 Wright, Federal Practice and Procedure § 662 (1969).

6.	Defendant objects to the Recommendation's finding that the search warrant affidavit submitted in support of the search warrant for Mr. Toups' home "clearly and methodically implicated both the defendant and his residence in the cross-border electronic transmission of at least 30 images depicting young children engaged in sexual acts." (D.E. 37, page 7.)

In fact, the <u>affidavit</u> **failed** to state information essential to any finding that Mr. Toups or his residence were involved in such a crime, including the following:

    a.	**<u>When</u>** the purported child pornography had been transmitted;

    b.	**<u>Where</u>** the purported child pornography had been transmitted from;

    c.	**<u>Where</u>** the purported child pornography had been received;

    d.	**<u>Who</u>** had transmitted the purported child pornography;

    e.	**<u>What connection the residence to be searched</u>** had to the purported child pornography.

The affidavit in support of the Search Warrant in this case was filed, under seal, as Government's Exhibit 1 at the hearing on the Motion to Suppress. That affidavit consists of eight pages and thirty-five paragraphs. However, only 40 lines, in 8 paragraphs on barely two pages, assert <u>any</u> facts relating to Mr. Toups, the residence to be searched, or the crime being investigated.[1]  None of the assertions state that Mr. Toups sent the purported child

---

[1] Paragraph 1 describes FBI Agent Margaret Faulkner's personal employment experience and background. Paragraph 2 simply states the purpose of the affidavit ("in support of a search warrant for the residence of . . . ") Paragraphs 3 and 35 assert Agent

4

pornography at a time certain from the residence in Montgomery across state or international borders.

The only facts asserted in the affidavit are the following:

  A. Florida law enforcement agents found email messages with child pornography attachments on the computer of Gabriel Beltram and Beltram admitted that he "had traded such images with other America OnLine members." (Affidavit, Government Exhibit 1, paragraphs 19 - 21.)

  B. One of the screen names on Beltram's computer with child pornography attachments was "nudetooldad." (Affidavit, Government's Exhibit 1, paragraph 21.)

  C. America On Line advised investigators that an AOL account subscribed to by G. Toups and billed to Glenn C. Toups had once had the screen name "nudetooldad" assigned to that account, but no longer did. (Affidavit, Government's Exhibit 1, paragraphs 21, 22.)

  D. AOL records listed 3580 McGehee Place, 4521, Montgomery as the address for G. Toups and sources of information identified the address of a Glenn Charles Toups as 3580 McGhee Road or McGhee Place Drive South, or McGehee Place Drive,

---

Faulkner's personal belief that there is probable cause to believe that relevant evidence will be found at the residence. Paragraphs 4, 5, 6 - 17, and 32 describe the statutes and word definitions which Agent Faulkner believes applicable to the request. Paragraphs 18 - 20 give the background of the related investigation in Florida, which did not concern Mr. Toups. Paragraphs 29 - 34 assert Agent Faulkner's beliefs about general practices of "the majority of individuals who collect child pornography."

South. (Affidavit, Government's Exhibit 1, paragraphs 21, 23 - 26.)

   E. Agent Faulkner viewed thirty images attached to emails on Gabriel Beltram's computer which were "received from 'nudetooldad'" and concluded the images were child pornography. (Affidavit, Government's Exhibit 1, paragraph 28.)

The affidavit did not identify the date(s) the "nudetooldad" attachments were sent or received or discovered; the location of the computer which or when it received them; the dates when an AOL user had first, last or ever used the screen name "nudetooldad;" or the location of any computer possessed by "nudetooldad" or by G. Toups or by Glenn C. Toups.

At the suppression hearing, Agent Faulkner admitted that she had "no information from AOL indicating what dates, if any, that name was associated with this [AOL] account." (Transcript, p. 24, lines 2 - 4.) She did not know when that name "had first been associated with that AOL account number." (Transcript, p. 37, lines 15 - 19.) She did not know on what date the name was removed from the AOL account (Transcript, p. 38, lines 6 - 7). She admitted that the name G. Toups was not on any emails sent to Beltram. (Transcript, p. 38, lines 10 - 14.) **She admitted that "prior to [her] execution of the search warrant" she did not have any information that Glenn Toups had ever possessed, received or distributed child pornography.** (Transcript, pp. 38 - 39.)

  7. Defendant objects to the Recommendation's characterization that "Toups relies on the fact that the images were allegedly sent approximately ten months before the search warrant was executed . . ." (D.E. 37, p. 7.) As the Recommendation concedes in a footnote,

6

the affidavit itself never identified a date when the images were sent. (D.E. 37, page. 9, n. 7.) Mr. Toups relies on the complete absence of any time identification.

8.      Defendant objects to the Recommendation's finding, contained in footnote 9, that the Magistrate Judge who reviewed the affidavit "could reasonably have inferred (1) that Faulkner had received the information from the Florida agents in fairly close temporal proximity to the recovery of the images from the Florida computer; and (2) that the recent recovery of the images from the Tampa recipient's computer established . . . the inference that the sender would still possess the images as well." (D.E. 37, pp. 9 - 10, n. 9.)  This finding piles inferences on air.  Nothing in the affidavit stated that the computer examined by the Florida agents was found in Florida or Tampa.  Nothing in the affidavit stated or implied that the Florida agents communicated with Agent Faulkner "in close temporal proximity" to the time they found the images.  Nothing in the affidavit stated or implied that the discovery of the images had been "recent."  At best, the affidavit made clear that although the Florida agents received information from AOL on or after January 2005, they did not communicate with Agent Faulkner until May 2005 and she in turn did not submit the request for a search warrant until July 28, 2005. (Affidavit, Government Exhibit 1, paragraphs 21, 18, and date on last page.)   There is simply no basis for a "reasonable inference" of a fact neither stated nor implied.

9.      Defendant objects to the findings, direct or implied, that no time frame need be established for possession of child pornography when that is the object of a search

7

warrant; that a discovery ten months earlier would not be a "stale" basis for a search warrant for child pornography; and that "the staleness determination is unique" in child pornography cases "because it is well known that images of child pornography are likely to be hoarded . . . in the privacy of their homes." (D.E. 37, p. 8, quoting *U.S. v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006).

The facts in the cases cited by the Recommendation for these findings are utterly unlike the factual assertions presented in the search warrant affidavit for Mr. Toups' home.

In *U.S. v. Irving*, 452 F.3d 110 (2d Cir. 2006), while the facts alleged varied from two to five years old, the facts established a twenty year pattern of child sexual abuse by the defendant whose home was to be searched. The search warrant was obtained only after the investigators had learned, and presented to the warrant-issuing magistrate, that the defendant had a conviction for attempted sexual abuse of minors; that the defendant had been found to possess child erotica during a Customs airport search; that the defendant had made written statements about his interest in child sexual contact; that the defendant had engaged in sex acts with minor boys in Mexico; that another, identified pedophile had confirmed these facts regarding the defendant. 452 F.3d at 115 - 116, 125 - 126. As the Second Circuit concluded "The nature of Irving's criminal activity and the age of the facts in the affidavit furnished evidence of *continuing conduct* . . ." 452 F.3d at 125 (emphasis added.) In the present case, the facts in the affidavit did not assert **any known conduct by Glenn C.**

**Toups.**

The search warrant in *U.S. v. Gourde*, 440 F.3d 1065 (9th Cir. 2005) (en banc), involved information that was at most five months old and that specifically identified the subject defendant's interaction with a child pornography website. The affidavit in support of the warrant was filed in May 2002 and asserted that the defendant had been a continuous paid subscriber since November 2001 to a members-only website, called "Lolitagurls.com," whose primary feature was an images section containing hundreds of images of child pornography and child erotica, and that the defendant's membership in this site had ceased only when the FBI shut down the website in January 2002. 440 F.3d at 1067 - 1068, 1070. Thus, the Court found that Gourde's established membership in such a site reflected his interest in child pornography. 440 F.3d at 1071. Here, there was at best circumstantial evidence that Mr. Toups was a customer of AOL and there is no contention that AOL is a members-only website or that it features child pornography. Indeed, AOL is well-known as a site of general information, including news, videos, and weather.

Similarly, in *U.S. v. Wagers*, 452 F.3d 534 (6th Cir. 2006), the affidavit in support of the search warrant was filed in April 2004 and was based on the defendant's one to two months long paid subscription memberships, purchased from two years to ten months earlier, to three different members-only websites, each of which contained child pornography. Unlike the present case, the defendant's AOL membership was specifically connected to the purchases of each of the website memberships. 452 F.3d at 537.

In *U.S. v. Guthrie*, 2006 WL 1689290 (10th Cir. 2006), the sufficiency of the search warrant affidavit was not the subject of the challenge to the search (which was brought in part on the magistrate's role as the defendant's counsel in an unrelated matter three years earlier) and in any event the affidavit apparently asserted that Yahoo! employees had identified the uploading of files of child pornography and "(i)nvestigators ultimately traced the activity to a computer located at [the address to be searched]." Slip op. at 1, 3, 4.

10.    Defendant objects to the Recommendation's finding that "the authorizing judge received . . . behavioral insight" into Mr. Toups from the case agent. (D.E. 37, p. 11.) The affidavit did not assert any knowledge about Mr. Toups other than his address. The agent conceded at the suppression hearing that she had no information that Mr. Toups had ever possessed, received or distributed child pornography. (Transcript, pp. 38 - 39.) Without an assertion that Mr. Toups possessed, received or distributed child pornography, the affidavit's speculation about the habits of persons who are interested in child pornography was surplusage and irrelevant.

11.    Defendant objects to the Recommendation's finding that the interview of Mr. Toups, simultaneous with the execution of the search warrant in his four-room apartment by five to seven law enforcement officers with weapons and bullet-proof vests/raid jackets, was not coercive. (D.E. 37, pp. 18 - 19.) The interview was coextensive with the search and was clearly a product of the search. There was no break in time between the search and the interview.

In this case, Mr. Toups was held in his apartment, by six or seven agents, for approximately three hours, as the agents executed an invalid search warrant. These circumstances were coercive. In addition, any statements made and any evidence gathered as a result of an unconstitutional seizure must be suppressed. *U.S. v. Dunn*, 345 F.3d 1285, 1290 (11th Cir. 2003); *U.S. v. Chanthasouxat*, 342 F.3d 1271, 1280 (11th Cir. 2003). Where the statements made were the direct result of the execution of the improper search, and thus due to be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**WHEREFORE**, Mr. Toups prays that all information gained from the foregoing search, seizure, and interrogations be suppressed.

Respectfully submitted,

s/ Christine A. Freeman
**CHRISTINE A. FREEMAN**
Counsel for Mr. Toups
FEDERAL DEFENDERS
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: Christine_Freeman@fd.org
TN Bar Code: 11892

**FEDERAL DEFENDERS**
**MIDDLE DISTRICT OF ALABAMA**
201 Monroe Street, Suite 1960
Montgomery, Alabama   36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 18, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

      K. David Cooke, Esquire
      Assistant United States Attorney
      One Court Square, Suite 201
      Montgomery, Alabama 36104

      s/ Christine A. Freeman
      **CHRISTINE A. FREEMAN**
      **FEDERAL DEFENDERS**
      201 Monroe Street, Suite 407
      Montgomery, Alabama 36104
      Phone: (334) 834-2099
      Fax: (334) 834-0353
      E-mail: Christine_Freeman@fd.org
      TN Bar Code: 11892